FILED
2017 Feb-06  AM 09:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LEONORA HEATON PENDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:15-cv-01612-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Lenora Heaton Pendley brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income.  (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for disposition of the matter.  (*See* Doc. 16).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be reversed and remanded.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I.  PROCEDURAL HISTORY

Plaintiff had previously filed applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") (R. 172-83),[2] which were denied at the initial decision level in August 2013, without any record of appeal (R. 59-80, 82, 93, 105-11).  Plaintiff protectively filed her current DIB and SSI applications on January 16, 2014.  (R. 103-04, 184-99).  The were initially denied.  (R. 81-102).  An administrative law judge ("ALJ") held a hearing on August 5, 2014 (R. 31-58) and issued an unfavorable decision on October 30, 2014 (R. 10-24).  The Appeals Council denied Plaintiff's request for review on July 15, 2015.  (R. 1-3).

## II.  FACTS

Plaintiff was 51 years old at the time of the ALJ's decision.  (R. 24, 184).  She had two years of college education and had worked in the past as a construction worker and a licensed practical nurse.  (R. 49-50, 220).  Plaintiff alleged onset of disability on August 8, 2011, due to spinal stenosis, fibromyalgia, spinal compression, possible hip fracture, severe nerve damage, and severe muscle spasms.  (R. 184, 274).  Following a hearing, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work

---

[2]References herein to "R.__" are to the page numbers of the administrative record.

with certain limitations.  (R. 18-22).  He further found that based on Plaintiff's age, education, work experience, and RFC and vocational expert testimony, she could perform work existing in significant numbers in the national economy.  (R. 23-24). The ALJ further found Plaintiff was not disabled.  (*Id*.)

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If

the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis.  20 C.F.R. §§ 404.1520(a)(4).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant

work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20 C.F.R. § 404.1520(a)(4)).  The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Id*.

## IV.  DISCUSSION

Plaintiff argues that the ALJ committed error in three ways: First, the ALJ improperly evaluated her credibility; Second, he erred in rejecting Dr. Beretta's opinion regarding the nature and severity of her impairment and symptoms; and Third, he failed to discuss her urinary incontinence in determining her credibility and RFC.  (Doc. 12 at 1).  Each argument will be addressed below.

## A.  Plaintiff's Credibility

### 1.  Generally

Plaintiff challenges the ALJ's decision concerning her credibility on four

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

grounds: (1) he improperly evaluated her failure to stop smoking and her recent

use of oxygen (Doc. 12 at 7-9); (2) he improperly evaluated her infrequent

treatment (*id*. 9-12); (3) he failed to make necessary functional limitation findings

(*id*. 12-13); and (4) he improperly evaluated her daily activities (*id*. 13-14).  The

Commissioner retorts that substantial evidence supports the decision to discount

her credibility.  (Doc. 13 at 3-12).

As noted in the last section, Plaintiff bears the burden of proving that she is

disabled within the meaning of the Social Security Act.  *See* 42 U.S.C. §

423(d)(5)(A); 20 C.F.R. §§ 404.1512 (a) & (c), 416.912(a) & (c) (2015); *Moore v.

Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274,

1278 (11th Cir. 2001).  Specifically, Plaintiff has the burden to provide relevant

medical and other evidence she believes will prove her alleged disability resulting

from her physical or mental impairments.  *See* 20 C.F.R. §§ 404.1512(a)-(b),

416.912(a)-(b).  In analyzing the evidence, it is important to note that it is the

functional limitations caused by the impairments and not the impairments

themselves which affect a claimant's ability to work.  *See* 20 C.F.R. §§

404.1545(a), 416.945(a); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.

1986) (severity of impairments must be measured in terms of their effect on the

ability to work, not from purely medical standards of bodily perfection or

normality).

In addressing a claimant's subjective description of pain and symptoms, the

law is clear:

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing: (1) evidence of an underlying medical condition; and (2)
> either (a) objective medical evidence confirming the severity of the
> alleged pain; or (b) that the objectively determined medical condition
> can reasonably be expected to give rise to the claimed pain.  *See Holt
> v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ
> discredits subjective testimony, he must articulate explicit and
> adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007,
> 1011 (11th Cir. 1987).  Failure to articulate the reasons for
> discrediting subjective testimony requires, as a matter of law, that the
> testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541,
> 1545 (11th Cir.1988).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 42 U.S.C. §

423(d)(5)(A), 20 C.F.R. §§ 404.1529, 416.929.

## 2.   Failure to Stop Smoking and Recent Use of Oxygen

As to the first issue - Plaintiff's continued smoking and use of oxygen -

Plaintiff initially argues that her failure to stop smoking does not support a finding

that her testimony was not credible.  (Doc. 12 at 8).  In support of this argument,

she cites *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1250 (N.D. Ala. 2004) (J.

Guin).  The Commissioner argues *Seals* is inapposite because the ALJ in that case

"relied on little other than the claimant's [failure to quit] smoking for his finding

that the claimant was not disabled." (Doc. 13 at 7-8).

United States District Judge Virginia E. Hopkins provided a detailed analysis of *Seals* in *Grier v. Colvin*, 117 F. Supp. 3d 1335 (N.D. Ala. 2015). She stated:

> In *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1247 (N.D. Ala. 2004), the ALJ refused to credit the claimant's subjective complaints because the claimant continued smoking despite numerous warnings from doctors to stop. Because the claimant had failed to follow prescribed treatment to quit smoking, the ALJ found that 20 C.F.R. § 404.1530[] precluded the claimant from being found disabled. *Id.*
>
> In addressing the claimant's appeal in *Seals*, Judge Guin began his analysis by correcting one of his previous holdings, stating "[t]his court has previously held that 'continuing to smoke despite a physician's warning as to consequences indicates that a claimant has made a conscious lifestyle choice which is inconsistent with a finding of disability.' " *Id.* at 1248 (quoting *Wilda Elliot v. Apfel*, No. 5:98–CV–00820–JFG, (Doc. 8 at 2) (N.D. Ala. Nov. 18, 1998)). Judge Guin determined that his prior holding "is not correct as a general statement of the law." *Id.* The court then discussed and adopted the approach utilized by the Seventh Circuit in *Shramek  v. Apfel*, 226 F.3d 809 (7th Cir. 2000). *See id.*
>
> In *Shramek*, the court found that "the ALJ erred in relying on [claimant's] inability to quit smoking as evidence of noncompliance and as a basis to find her incredible." 226 F.3d at 813. The Seventh Circuit reached this decision after noting that "the ALJ here made no finding that the prescribed treatment would restore [claimant's] ability to work, and the record would not in fact support such a finding." *Id.* Furthermore, no connection had been made between the claimant's symptoms and her smoking. *Id.*
>
> Finally, the court commented that failure to quit smoking is not synonymous with treatment in the typical sense, stating:

8

> [w]e note that even if medical evidence had established a
> link between smoking and her symptoms, it is extremely
> tenuous to infer from the failure to give up smoking that
> the claimant is incredible when she testifies that the
> condition is serious or painful.  Given the addictive
> nature of smoking, the failure to quit is as likely
> attributable to factors unrelated to the effect of smoking
> on a person's health.  One does not need to look far to
> see persons with emphysema or lung cancer—directly
> caused by smoking—who continue to smoke, not
> because they do not suffer gravely from the disease, but
> because other factors such as the addictive nature of the
> product impacts their ability to stop.  This is an
> unreliable basis on which to rest a credibility
> determination.

*Shramek*, 226 F.3d at 813.

In applying these rules set forth in *Shramek*, the court in *Seals*
stated that even assuming the doctor's statements did constitute a
prescribed course of treatment, "the [claimant]'s failure to stop
smoking does not necessarily constitute a refusal to follow that
prescribed treatment.  A willful refusal to follow treatment may not be
assumed from a mere failure to accomplish the recommended
change."  *Seals*, 308 F. Supp. 2d at 1250 (citing *McCall*, 846 F.2d at
1319) (holding that a claimant's failure to lose weight does not
constitute a refusal to follow the treatment).  The court found
evidence in the record that the claimant had been trying to quit, and
determined that "the record does not contain substantial evidence to
support a finding that the plaintiff did not try to stop smoking in the
present case."  *Id.* at 1251.

Judge Guin also commented about how the claimant's
addiction necessitates a slightly different analysis than the typical
noncompliance situation, stating:

> [b]reaking an addiction is not a simple matter of
> rationally deciding to cease the addictive behavior,

9

whether it be smoking, drinking or drug abuse.  The
world would obviously be a better place if that were so.
In the case of nicotine addiction, a mere failure to
successfully stop smoking will not support a finding of
willful refusal to try.  If the plaintiff was unable to stop
smoking because she was addicted to nicotine, her
noncompliance would not be unjustified.  The burden is
on the Commissioner to produce evidence of unjustified
noncompliance.  *Dawkins v. Bowen*, 848 F.2d 1211,
1214, n. 8 (11th Cir. 1988).  In the present case, the ALJ
made no finding that the plaintiff was actually able,
mentally and physically, to stop smoking.  Nor did the
Commissioner cite to any evidence, other than the
plaintiff's failure to stop smoking, to show that her
noncompliance was unjustified.

*Seals*, 308 F. Supp. 2d at 1251.

Further, the ALJ also failed to make another essential finding
when discrediting because of noncompliance with treatment.  More
specifically, the ALJ omitted any determination that, had the claimant
followed the prescribed treatment, the claimant's ability to work
would be restored.  *Id.*  Although the ALJ found that the claimant's
condition would improve if she stopped smoking, "[i]mprovement
does not equal an ability to work."  *Id.* at 1251–52.

Assuming that the statements made to Ms. Grier by her treating
physicians do constitute prescribed treatment, the ALJ did not inquire
whether her failure was unjustified.  Similar to the claimant in *Seals*,
Ms. Grier is nicotine dependent and, thus, because of her addiction,
her inability to quit smoking does not constitute an unjustified reason
for noncompliance without any further inquiry by the ALJ. (Tr. 13);
*see Seals*, 308 F. Supp. 2d at 1251 ("If the plaintiff was unable to stop
smoking because she was addicted to nicotine, her noncompliance
would not be unjustified.  The burden is on the Commissioner to
produce evidence of unjustified noncompliance."); *see also* SSR
96–7p ("individual's statements may be less credible ..., if the medical
reports or records show that the individual is not following the

treatment as prescribed and there are no good reasons for this failure") (emphasis added).

In the present case, the ALJ did not state whether Ms. Grier was mentally and physically capable of quitting smoking, nor did the ALJ cite to any evidence, other than her failure to stop, to show that her noncompliance was unjustified.[]  Furthermore, the ALJ did not cite to any evidence that showed that, if Ms. Grier quit smoking, her condition would improve to the point in which she could be capable of performing work.  While the record does show instances of Ms. Grier being warned that her condition will not improve unless she quits smoking, the court is unable to find any report that establishes that if Ms. Grier did quit, her condition would improve to the point that she could work.  Therefore, the court finds that the ALJ's reliance on Ms. Grier's failure to quit smoking as evidence weighing against her credibility does not serve as substantial evidence supporting the ALJ's credibility determination.

*Grier*, 117 F. Supp. 3d at 1346-48.

In this instance, it is important to begin by stating what the ALJ found and did not find.  Specifically, he found that Plaintiff's failure to quit smoking undermined her credibility.  He did not find that she would not be disabled if she had followed the medical advice to stop smoking.  (R. 20).  Thus, the relevant question is whether the ALJ properly considered Plaintiff's failure to quit smoking in determining her credibility.  The undersigned finds that he did.

It is undisputed that one of Plaintiff's severe impairments is chronic obstructive pulmonary disease ("COPD").  (R. 16).  What is disputed is the ALJ's finding that "the disabling limitations alleged by [Plaintiff] are not credible in light

11

of the recent nature of her treatment and her continued noncompliance with recommendations for smoking cessation." (*Id*.)  The evidence shows that Plaintiff went to the emergency room with complaints of congestion, coughing, and shortness of breath on May 18, 2014.  (R. 379, 383 & 392).  She refused admission and was sent home with steroids, antibiotics, and inhaler treatments.  She returned two days later with complaints of worsening symptoms.  She was diagnosed with COPD exacerbation with acute hypoxemic respiratory failure.  She was placed on COPD protocol, including oxygen therapy.  (R. 399).  She was discharged three days later with mild expiratory wheezing and a prescription for continued home oxygen therapy with the intent that she be "wean[ed]" from using the oxygen.  (R. 401-02).  Tobacco cessation again was encouraged by the health care providers.  (R. 402).

Plaintiff's next reported treatment was on July 7, 2014, for a progress review.  (R. 416).  She was found to have a pulse oxygen level of 92% while on oxygen therapy.  (R. 417).  She again was told to stop smoking.  (R. 416).  At her administrative hearing on August 5, 2014, Plaintiff stated she was no longer smoking.  (R. 33, 45).  She also stated that she smoked before she went into the hospital, but she "totally quit since then."  (R. 47).  The ALJ's decision was rendered on October 30, 2014.  (R. 24).

12

In view of the foregoing testimony, it was appropriate and reasonable for the ALJ to consider Plaintiff's noncompliance with the instruction to cease smoking.  While this evidence is not dispositive on the issue of credibility, it certainly is relevant.  When an individual with a severe medical condition does not follow medical direction, it certainly brings into question the severity of the condition or the limitations imposed by the condition.  In reaching this determination, the court recognizes the addictive nature of smoking.[4]  The court does not find, however, that to be sufficient to disregard such evidence in its entirety when considering a claimant's credibility.[5]  Additionally, Plaintiff stated she quit smoking after her hospital visit but the medical records indicate she was still being told to quit smoking two months later.  The only evidence she quit smoking is her testimony at the hearing.  This is a credibility issue properly considered by the ALJ.

Plaintiff next argues in conclusory fashion that the ALJ erred by not determining whether her use of portable oxygen to treat her shortness of breath

---

[4]The court recognizes this may be particularly true in Plaintiff's situation because in February 2013 she reported smoking one pack per day for twenty-one years.  (R. 339).

[5]To the extent Plaintiff argues in her reply that *Seals* "directs the court to review her subjective disabling limitations from COPD without using her failure to quit somking as a reason to find her less than credible," the court disagrees.  (Doc. 14 at 4).  *Seals* is not binding precedent.  It is pervasive authority only.

would meet the duration requirements for disability.  (Doc. 12 at 8).  As just noted, Plaintiff's full-time oxygen use commenced on May 18, 2014.  (Doc. 12 at 8). Thus, any impairment caused by this treatment could not meet the twelve-month durational requirement for disabling impairments since the hearing was only two and one-half months later and there was no evidence offered at the hearing that her use of oxygen treatments would continue.  Additionally, there is no evidence in the record demonstrating that the condition necessitating the oxygen treatment was expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505(a), 404.1509 & 416.905(a), 416.909.  *Cf. Pritchett v. Comm'r Soc. Sec*., 315 F. App'x 806, 815 (11th Cir. 2009) (affirming Appeals Council decision to deny review despite new evidence because new records demonstrated that the claimant suffered liver problems, "but did not demonstrate that [her] liver impairment would not resolve with treatment and proper diet, or otherwise lasted or would last for 12 continuous months...").  To the contrary, the evidence shows that the oxygen therapy was implemented with the intent that she be "wean[ed]" from using it.  (R. 401-02).  Plaintiff has not argued otherwise.  Thus, this claim is without merit.

### 3.    Infrequent Treatment

 Plaintiff next argues that the ALJ erred in considering her infrequent

treatment for back pain.  (Doc. 12 at 9).  Specifically, she argues that the ALJ

failed to consider her inability to afford treatment.  (*Id*. at 9-11).

Plaintiff alleges that she cannot work due to pain and physical dysfunction.

In her function report, she stated that her medical condition affects her ability to

lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use her hands.  (R.

19, 308).  She also alleges that her pain is "constant" and "severe."  (R. 303, 308,

309).  She further states that she can only sit for fifteen minutes, stand for five to

ten minutes, and walk for ten minutes at a time.  (R. 44).

In addressing this claim, the court sets forth the following guiding

principles:

> To demonstrate that pain or another subjective symptom
> renders her disabled, claimant must "produce 'evidence of an
> underlying medical condition and (1) objective medical evidence that
> confirms the severity of the alleged pain arising from that condition
> or (2) that the objectively determined medical condition is of such
> severity that it can be reasonably expected to give rise to the alleged
> pain.' " *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)
> (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).
> If an ALJ discredits subjective testimony on pain, "he must articulate
> explicit and adequate reasons."  *Hale v. Bowen*, 831 F.2d 1007, 1011
> (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th
> Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.
> 1986)).  Furthermore, once an ALJ determines whether the pain
> standard has been met, he can move forward to consider whether
> claimant's complaints are credible in light of the substantial evidence
> of record.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.
> 1992) ("After considering a claimant's complaints of pain, the ALJ
> may reject them as not creditable, and that determination will be

reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).  In making the credibility determination, the ALJ should consider such factors as: the objective medical evidence; other statements by medical providers; work history; other people's observations; daily activities; location, duration, frequency, and intensity of the alleged symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment other than medication; other measures used to relieve the symptoms; and other factors.

*Jones v. Colvin*, 5:11-cv-3222-CLS, 2013 WL 1909485, *4 (N.D. Ala. May 6, 2013) (J. Smith).  Additionally, when addressing frequency of treatment issues, the following applies:

[T]he Eleventh Circuit has recognized that a claimant's failure to seek treatment for a period of time is a factor which may be considered against a claimant. *See, e.g., Dyer* [*v. Barnhart*], 395 F.3d [1206,] 1211 [(11th Cir. 2005)]; *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).  For example, in *Dyer v. Barnhart*, the ALJ discredited the claimant's subjective complaints of pain testimony by explaining that the alleged pain had not required routine or consistent treatment, and the claimant often went for months or years without complaining to his physicians of this pain.  395 F.3d at 1211.  In that case, the Eleventh Circuit reversed the district court's opinion to the contrary, and concluded that the ALJ's findings and denial of benefits were correct.  *Id.* at 1212.  Similarly, in *Watson v. Heckler*, the court implicitly sanctioned the ALJ's consideration of the claimant's "failure to seek treatment after June 1981 (until after the denial of benefits by the administrative law judge)."  738 F.2d at 1173.  The *Watson* court ultimately concluded that the claimant's lack of medical treatment along with other evidence properly supported the ALJ's decision to discredit the claimant's pain testimony.  *Id*. at 1173.  Plaintiff offers no case law contradicting these controlling precedents.

On the other hand, a claimant who cannot afford prescribed medical

16

> treatment and can find no way to obtain it, may be excused from
> noncompliance.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th
> Cir. 1988).  When compliance with a prescribed source of treatment is
> at issue, the ALJ has a duty to fully investigate possible reasons for
> the alleged noncompliance.  *See Lucas*, 918 F .2d at 1574.

*Wright v. Colvin*, 4:13-cv-01425, 2015 WL 526806, *17 (N.D. Ala. Feb. 9, 2015)

(J. Proctor).

Plaintiff relies on Social Security Ruling ("SSR") 96-7p and *Dawkins v.*

*Bowen* in support of her contention that the ALJ improperly considered her

infrequent treatment.  SSR 96-7p requires that when evaluating credibility, the

adjudicator should consider all the evidence and give specific reasons for the

weight assigned specific statements.  *Id*., 1996 WL 374186, *4 (July 2, 1996).

Any finding "must be grounded in the evidence and articulated in the

determination or the decision."  *Id*.  An "individual's statements [about pain] may

be less credible if the level or frequency of treatment is inconsistent with the level

of complaints, or if the medical reports or records show that the individual is not

following the treatment as prescribed and there are no good reasons for this

failure."  *Id*. at *7.   However, the regulation also provides that the

> adjudicator must not draw any inferences about an individual's
> symptoms and their functional effects from a failure to seek or pursue
> regular medical treatment without first considering any explanations
> that the individual may provide, or other information in the case
> record, that may explain infrequent or irregular medical visits or
> failure to seek medical treatment.

17

*Id*.  One of the specific examples of valid reasons for not obtaining treatment listed in the regulation is that the individual "may be unable to afford treatment and may not have access to free or low cost medical services."  *Id*. at *8.

In *Dawkins*, the Eleventh Circuit stated that "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.' " *Id*., 848 F.2d at 1213 (citing *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986) (footnote omitted)).  The court then found that "the ALJ explicitly noted [the claimant's] noncompliance, but did not consider her poverty as a good excuse."  *Id*. at 1214.  Reversing for further administrative proceedings, the court stated:

> The problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that appellant was not entitled to benefits on [claimant]'s failure to follow prescribed medical treatment.  Although the ALJ found that [claimant]'s testimony was "inconsistent with the findings of her attending physicians," the only inconsistency identified by the ALJ involved noncompliance with prescribed treatment.

*Id*.  In *Wright*, the plaintiff alleged that the ALJ erred in drawing adverse inferences from her lack of medical treatment.  2015 WL 526806, *17.  She further alleged he failed to ask follow-up questions and otherwise develop the record concerning the lack of treatment – particularly concerning her inability to

18

afford medication.  *Id*.   The court held that the ALJ did make the requisite

inquiries and consider the plaintiff's explanation.  *Id*.  It also noted, in pertinent

part, that "the ALJ only inferred from Plaintiff's lack of medical treatment that

Plaintiff's disability was 'generally under control' .... which is different than the

circumstance in which the Commissioner infers from a claimant's noncompliance

that, if claimant were medicated, she would not to be disabled."  *Id*. at *18.

    In this case, the ALJ did reference Plaintiff's infrequent treatment

concerning her alleged back and neck pain and her COPD.  (R. 19-20).  He also

made terse inquiries during the administrative hearing concerning her inability to

pay for treatment.  (R. 57).  However, he also based his decision on other factors

besides non-treatment.  Concerning the pain, the ALJ stated that Plaintiff's

treating pain management physician, Dr. James Beretta, "only saw [her] in April

2013 and March 2014."  (R. 19).  She was diagnosed with spinal stenosis, but Dr.

Beretta "noted few objective findings on physical examination."  (*Id*.)  Dr. Beretta

also opined during the April 2013 visit that Plaintiff was a "spinal stenosis

patient" who would "die soon without ACDF surgery."  (R. 22).  He further

concluded that Plaintiff was "disabled for more than 12 months for a lifetime."

(*Id*.)  Dr. Beretta treated Plaintiff with narcotic analgesic pain medication and

recommended that she followup with a neurosurgeon, which she did not do.  (R.

19). In July 2013, Plaintiff went to the Community Free Clinic where she reported multiple areas of pain and she was referred to Dr. Beretta.

Concerning her COPD, the ALJ found that premised on her recent onset as evidenced by her May 2014 hospital experience and her July 2014 Community Clinic visit and her noncompliance with smoking cessation recommendations, Plaintiff was not credible.  (R. 20).

While it is a close call, the court finds Plaintiff is not entitled to relief on this claim for various reasons.  First, while the ALJ's inquiry into Plaintiff's financial circumstances and availability of public assistance was limited, it was addressed by him.  Second, Plaintiff's financial circumstances only limited her ability to see a "heart and lung doctor."  (R. 57).  She was able to go to the emergency room and the free clinic when necessary, and she was able to fill her oxygen prescription via public support.  (*See* R. 57).  The ALJ's decision finding that Plaintiff is not credible is otherwise supported by substantial evidence.

### 3.     Lack of Functional Limitation Findings

Plaintiff next argues that while the ALJ relied on the overall normal findings from Dr. Hikel Boohaker, he failed to consider the objective medical findings made during a prior consultative examination by Dr. Grant Clark.  (Doc. 12 at 13).  The Commissioner argues that Dr. Clark's findings were provided in

relation to a prior determination denying her claims; therefore, res judicata principles apply.  (Doc. 13 at 10).

As noted initially herein, Plaintiff previously filed SSI and DIB applications, which were denied at the state agency level in August 2013.  There was no appeal of the same, nor did Plaintiff seek to reopen the prior proceeding.  (*See* R. 14, 59-80, 82, 93, 109-11).  The ALJ in this matter, "after reviewing all the evidence," concluded that "no grounds exist upon which the [prior] determinations may be reopened."  (R. 14).  He further found that res judicata applies through August 9, 2013.  (*Id*.)  This resulted in consideration being "given only to whether [Plaintiff] may receive benefits by virtue of her current applications."  (*Id*.)

Under the applicable regulations, administrative res judicata applies when the agency has made a previous final determination or decision regarding a claimant's rights on the same facts and issues.  *See* 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1).  If a claimant fails to proceed to the next level of administrative review, the last determination is binding.  *See* 20 C.F.R. §§ 404.905, .921, .955, .981 & 416.1405, .1421, .1455, .1481.

Because Dr. Clark's assessment was derived and considered in relation to Plaintiff's prior claims and because Plaintiff did not appeal the denials of her prior claims, those decisions are subject to res judicata.  Accordingly, the ALJ did not

err in failing to consider Dr. Clark's findings.

Additionally, Plaintiff has failed to argue, much less demonstrate, any impact that Dr. Clark's findings might have.  (*See* Doc. 2 at 12-13).  A review of Dr. Clark's report demonstrates that his findings were consistent with the ALJ's RFC finding.  *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (stating, "Although the ALJ did not explicitly state what weight he afforded the opinions of [several physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless" and "while each of these doctors found that [claimant] suffered from chronic pain or conditions associated with chronic pain, not one of these doctors indicated that [claimant] is unable to perform sedentary work as a result of that pain.").  Accordingly, any purported error is harmless.

### 4.    Plaintiff's Daily Activities

Plaintiff also argues the ALJ erred in evaluating her activities of daily living.  (Doc. 12 at 13-14).  Relying on two recent opinions from this court, Plaintiff argues that the ALJ's findings are inadequate.  They are decisions by Judge Hopkins in *Grier v. Colvin*, 117 F. Supp. 3d 1335 (N.D. Ala. 2015) and *Springer v. Colvin*, 5:14-cv-1827-VEH, 2015 WL 6503700 (N.D. Ala. July 30, 2015).  The Commissioner argues that the ALJ provided specific reasons

supported by substantial evidence to discount Plaintiff's credibility.  (Doc. 13 at 12).

After characterizing Plaintiff's daily activities as "fairly limited," the ALJ discounted their weight because they could not "be objectively verified with any reasonable degree of certainty" and because "of the relatively weak medical evidence and other factors discussed in th[e] decision."  (R. 21).  Concerning the second factor, the ALJ stated that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons."  (*Id*.)

In *Grier*, the ALJ discounted the plaintiff's activities of daily living using reasoning that is almost identical to the language at issue in this case.  Concerning the absence of "objectively verified" evidence, Judge Hopkins stated that she was

> unable to find any binding authority that states testimony regarding daily activities must be objectively verified.  Furthermore, if a claimant is not required to provide objective proof of pain, it follows that the claimant's testimony regarding daily activities does not need to be objectively verified either.  Seemingly, the ALJ would never credit a claimant's testimony about limited daily activities, unless the claimant allows some third-party to observe her daily activities for some period of time.

117 F. Supp. 3d at 1353.  As to the second reasoning for discrediting the plaintiff's testimony - other factors - Judge Hopkins found that none of them constituted substantial evidence supporting the determination.  *Id*.  Judge Hopkins further found that "the ALJ's statement that 'it is difficult to attribute that degree of

limitation to the claimant's medical condition, as opposed to other reasons'

seemingly implies that the ALJ believes [the plaintiff] has chosen to live her

limited lifestyle.  While the ALJ's theory may be correct, he did not point to

adequate evidence to back up this conclusion."  *Id*.

In *Springer*, Judge Hopkins again commented on an ALJ's reference to

daily activities not being "objectively verified with any reasonable degree of

certainty."  She stated that such reasoning

> is almost a tautology that objective verification of a witness's
> statement is impossible.  *See United States v. Hall*, 165 F.3d 1095,
> 1119 (7th Cir. 1999) (Easterbrook, J., concurring) (quoting *Krist v.
> Eli Lilly and Co*., 897 F.2d 293, 297 (7th Cir. 1990) (Posner, J.) ("The
> basic problem about testimony from memory is that most of our
> recollections are not verifiable.").  Whatever significance that
> observation may have for policy discussions, it is outside of the scope
> of adjudication.  *Cf. id*. ("[A] trial about the process of trials would
> divert attention from the main question.").  Second, this court has
> noted before, and takes the opportunity to do so again, that there is no
> requirement that testimony regarding daily activities be objectively
> verified....

2015 WL 6503700 at *9.

While this court agrees with Judge Hopkins that objective verification of a

claimant's activities is not required, it certainly is helpful when such exists.

However, that is the exception rather than the rule.  The ALJ in this instance has

done little to demonstrate that substantial evidence supports his conclusion.  Thus,

it is inadequate on its own.  The ALJ did provide a second reason - weak medical

24

evidence and other factors previously discussed in the opinion.  This court does

not find such a conclusory statement helpful, but it still must evaluate the

reasoning under the circumstances.

With regard to her back and neck pain, the record shows that Plaintiff has

suffered from multilevel degenerative changes in her back and neck since at least

October 2011.[6]  (R. 337-38).  During the relevant period, she was seen only twice

for back and neck pain by Dr. Beretta and once by the Community Free Clinic.

She was diagnosed with spinal stenosis.  The medical notes from those visits do

not enumerate disabling symptoms or recommended significant medical

restrictions.  With regard to her COPD, her first significant event was in May 2014

when she went to the emergency room.  While this episode resulted in her being

placed on an oxygen regiment, the record shows this is intended to be temporary.

Finally, with regard to her obesity, the ALJ found that no medical provider found

her obesity to be a limiting medical condition.  (R. 21).  By looking at the entire

record, the undersigned finds that the ALJ has offered "particular reasons

supported by substantial evidence" to overcome Plaintiff's challenges.

**B.      Opinion of Plaintiff's Treating Doctor**

Plaintiff next argues that the ALJ improperly rejected the medical opinion of

_____

[6]Plaintiff attributes the condition to an accident occurring on August 8, 2011.  (R. 337).

her treating source – Dr. Beretta.  (Doc. 13-12-15).  The opinion at issue was

issued on a "Patient Charity Care Application-Physician Disability Confirmation"

dated May1, 2014.  (R. 334).  It states under the "major illness, injury, or

condition" question as follows: "Spinal stenosis pt to die soon without ACDF

surgery."[7]  (*Id*.)  It further provides that she has been disabled for a "lifetime."[8]

The ALJ gave "little weight" to Dr. Beretta's's opinion for multiple reasons,

stating as follows:

> First, it is inconsistent with Dr. Beretta's treatment notes.  Dr. Baretta
> referred the claimant to a neurosurgeon but did not ever himself
> recommend surgery.  Moreover, the record shows that the claimant
> did not follow up with his referral.  In addition, as noted above, after
> April 2013, Dr. Beretta did not treat the claimant again until March
> 2014, almost a year later.  Furthermore, the undersigned notes that Dr.
> Beretta's opinion is vague in that it does not specify function by
> function limitations and [is] conclusory without explanation.  In
> addition, it addressed an issue that is reserved to the Commissioner....

(R. 22).  Plaintiff challenges the foregoing findings, asserting that the ALJ did not

articulate his reasoning as is required.  (Doc. 12 at 15).  Specifically, she

challenges the findings that (1) Dr. Beretta's opinion is inconsistent with his

treatment notes; (2)  Plaintiff's failure to have surgery discredits the severity of her

---

[7]Counsel for the Commissioner believes, and counsel for Plaintiff does not contest, that ACDF surgery stands for Anterior Cervical Discectomy and Fusion surgery.  (Doc. 13 at 12, n.5).

[8]It also states: "Disabled for more than 12 months for a lifetime per Dr. Beretta."  (R. 334).

neck pain; and (3) her treatment consisted of two visits almost a year apart.  (*Id*. at

15-16).  Additionally, she challenges his determination that Dr. Beretta's opinion

was vague.  (*Id*. at 16).

    As noted above, Plaintiff bears the burden of proving that she is disabled

and, consequently, she is responsible for producing evidence in support of her

claim.  *See* 42 U.S.C. §§ 423(d)(5); *Moore*, 405 F.3d at 1211 (11th Cir. 2005);

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("the claimant bears the

burden of proving that he is disabled, and, consequently, he is responsible for

producing evidence in support of his claim").  Plaintiff must prove the inability "to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).

    Eleventh Circuit precedent is clear in evaluating this claim:

> "Medical opinions are statements from physicians and psychologists
> or other acceptable medical sources that reflect judgments about the
> nature and severity of [the claimant's] impairment(s), including [the
> claimant's] symptoms, diagnosis and prognosis, what [the claimant]
> can still do despite impairment(s), and [the claimant's] physical or
> mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).
> Absent "good cause," an ALJ is to give the medical opinions of
> treating physicians "substantial or considerable weight." *Lewis* [*v.
> Callahan*], 125 F.3d [1436,] 1440 [(11th Cir. 1997)]; *see also* 20
> C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).  Good cause exists

"when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips* [*v. Barnhart*], 357 F.3d [1232,] 1241[(11th Cir. 2004)].  With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

*Winschel v. Comm'r*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  "Additionally, the Commissioner, not a claimant's physician, is responsible for determining whether the claimant is statutorily disabled.  20 C.F.R. § 404.1527(d)(1).  Specifically, '[a] statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.' "  *Forsyth v. Comm'r*, 503 F. App'x 892, 894 (11th Cir. 2013).

With regard to the ALJ's statement that Dr. Beretta's opinion is inconsistent with his treatment notes, the record is confusing.  The Commissioner is correct that Dr. Beretta did not recommend surgery.  However, it is undisputed that he is a pain management physician, not a neurosurgeon.  To the extent Plaintiff argues that the ALJ is incorrect that she did not follow through on the UAB Neurosurgery

28

consult, the record shows that on March 29, 2013, Dr. Beretta's treatment plan included UAB Neurosurgery.  (R. 368).  On April 26, 2013, Dr. Beretta's progress note reflects a referral to UAB Neurosurgery.  (R. 364).  The next reference to surgery is in Dr. Beretta's March 12, 2014 progress note stating that Plaintiff was "nonsurgical."  (R. 362).  The court does not find this evidence significant.  If Plaintiff did not go as directed, it tends to support the ALJ's decision that she did not follow Dr. Beretta's direction.  If Plaintiff did go, and was found to not be a surgical candidate, that undermines Dr. Beretta's opinion that without surgery, Plaintiff would die.  Either way, this evidence does not support Plaintiff's contention challenging the ALR's decision.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (noting that "good cause" for discounting the opinion of a treating physician exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.).

Next, Plaintiff argues that her failure to have surgery does not discredit the severity of her neck pain.  (Doc. 12 at 16).  The Commissioner argues the opposite, stating the absence of surgery specifically contradicts the opinion of Dr. Beretta.  (Doc. 13 at 14).  The court must consider the fact that a more

29

conservative treatment plan was followed in this instance.  This supports the ALJ's decision to discount Dr. Beretta's opinion.  *See Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 815-18 (11th Cir. 2007) (approving consideration of the lack of treatment and further conservative treatment to discount the plaintiff's pain testimony); *Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (finding that conservative treatment supported the ALJ's decision to discount treating physicians' opinions).

Plaintiff further argues that the ALJ incorrectly noted that her treatment consisted of two visits almost a year apart when, in fact, there were three visits about eleven months apart.  (*Id*. at 16).  Plaintiff is correct that there were three visits and that the time between the second and third visit was about eleven months.  The court does not find these distinctions significant.  They do not change the fact that Plaintiff's treatment was relatively conservative and Dr. Beretta's notes do not reflect disabling symptoms or pain.

Lastly, Plaintiff challenges the ALJ's determination that Dr. Beretta's opinion was vague.  (*Id*. at 16).  The ALJ found that Dr. Beretta's opinion was vague in that it did not specify the functional limitations on her abilities and did not contain any explanation.  Plaintiff asserts Dr. Beretta's opinion did not need to provide a function-by-function assessment because it was a medical source

opinion about the nature and severity of her impairments and symptoms. (*Id*. (citing 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)). The ALJ's decision to discount the opinion because it was vague and conclusory was appropriate. He considered the opinion as he was required to do. The opinion is of little use due to the lack of specificity and the lack of support in the record, and because it provides no direction concerning Plaintiff's ability to work, which is the necessary inquiry. *Cf. Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (the "mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard").

## C.   Plaintiff's Urinary Incontinence

Plaintiff argues that the ALJ erred in failing to evaluate her allegations of urinary incontinence. (Doc. 12 at 17-21). The Commissioner argues that the ALJ did not err in his evaluation of Plaintiff. (Doc. 13 at 17). She also asserts that much of Plaintiff's evidence of incontinence was subject to administrative res judicata. (*Id*. at 16-17).

During Plaintiff's administrative hearing, she stated that she could not work because of her spinal problems and the related incontinence. (R. 39-40, 42). She stated that she had "severe pain in [her] back and the doctor said [she] ha[d] anterior and posterior slipping of the disc, spinal stenosis." (R. 39). As a result,

she had difficulty controlling her "bathroom habits" and has muscle spasms and nerve damage. (*Id*.) She also stated that the pain from her back prevents her from working. (R. 39-40). She further stated that typically she wears 10 to 12 diapers and as many as 20 per day when she is taking a Lasix. (R. 42). She did not include any allegation of incontinence in her present application for disability. (R. 274). This condition was listed on her previous applications for benefits, which were denied. (*See* R. 218, 255).

During the consideration process on her previous applications, Plaintiff was examined by Dr. Grant Clark at the request of the Alabama Disability Determination Services. (R. 353). In his Clinical History, Dr. Clark stated that Plaintiff informed him of her incontinence as follows:

> Ms. Pendley states that she has been having difficulty with incontinence. She states that it is mostly a bladder incontinence then bowel incontinence. She states that physicians have told her this may be related to her low back injury. In particular she wears adult diapers and goes six to eight times a day. She states that essentially around the clock, she is largely incontinent of urine as she is unable to have the sensation of when she needs to go to the bathroom. She states when she does get the sensation that she does need to urinate, she is unable to control this.

(R. 354). In the section of his notes discussing his impression, Dr. Clark states:

> Ms. Pendley does give a clinical history of neurologic incontinence issue rather than a stress incontinence issue from pelvic floor atrophy. She is having over 6 to 8 diapers a day. She did have [an] exam finding of a positive straight leg test on the left that is conceivable

32

> that she may have a nerve outlet impingement impinging upon her ability to sense when her bladder is full.  However, I am not aware about further workup that would elucidate medical dimensions of eulogy for incontinence.  However, her clinical history is consistent with neurogenic bladder.

(R. 358).  Additional medical records from Dr. Lorn Miller on February 18, 2013, state Plaintiff was positive for intermittent bladder incontinence three to four times a day.  (R. 341).  Dr. Beretta also mentioned incontinence in his progress notes on March 29, 2013, and April 26, 2013.  (R. 364, 368).

As to the Commissioner's argument that res judicata precludes consideration of the evidence from Drs. Clark and Miller, the court agrees in part. To the extent there has been a "previous determination or decision ... about [Plaintiff's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision [had] become final by either administrative or judicial action," it is not reviewable.  *Luckey v. Asture*, 331 F. App'x 634, 638 (11th Cir. 2009) (citing 20 C.F.R. § 404.957(c)(1)).  However, to the extent that information is relevant background information on the new application for a different period, it should be considered in determining and assessing Plaintiff's medical history for determining her disability, if any, for a subsequent time.  (*See* R. 14 ("Consideration, therefore, will be given only to whether claimant may receive benefits by virtue of her current applications.")).

The Commissioner further argues that "the ALJ did not err in evaluating her incontinence."  (Doc. 13 at 17).  In support of her contention, the Commissioner cites *Norton v. Comm'r of Soc. Sec.*, 607 F. App'x 913 (11th Cir. 2015).  The problem with this argument is that as best as the court can discern, the ALJ did not evaluate Plaintiff's incontinence.  *Norton* is significant in that it sets forth relevant guiding principles:

> "It is well-established that the ALJ has a basic duty to develop a full and fair record." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  Consequently, the ALJ must " 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.' " *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)).  The ALJ must consider all of the impairment evidence presented at the hearing, stating the weight accorded to each item and the reasons for accepting or rejecting the evidence. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990).

607 F. App'x at 915.  Additionally, the court recognizes that an ALJ is not required to discuss every piece of evidence in detail.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, ... , is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.' " (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted)).

*Norton* is distinguishable from the present matter because the ALJ in that case actually reviewed the urinary incontinence impairment. *Id.* at 916 ("Substantial evidence also supported the ALJ's conclusion that Norton did not suffer from a severe impairment caused by urinary incontinence, which was not included in his application as a disabling impairment."). In this case, the ALJ made no findings and did not discuss the evidence in the record. The court cannot say on this record that the ALJ adequately addressed this issue.

Because the record is not fully developed concerning Plaintiff's incontinence impairment, the case must be remanded for a complete analysis of the matter. The review should include the following: an analysis of the nature and degree, if any, of the impairment; the impact this condition may have in combination with her other conditions (*e.g.* obesity, oxygen treatments); and the effects of this impairment on Plaintiff's residual functional capacity. This list is intended to provide direction, not to hamstring the ALJ's further review of this impairment or Plaintiff's present condition.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the case is due to be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. An appropriate order will be entered separately.

**DONE,** this the 6th day of February, 2017.

_John E. Ott_

_____

**JOHN E. OTT**
Chief United States Magistrate Judge